UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CASEY D.,

                                    Plaintiff,

v.                                                          5:23-CV-01049
                                                                (DNH/ML)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

APPEARANCES:                          OF COUNSEL:


HILLER COMERFORD                      JUSTIN M. GOLDSTEIN, ESQ.
INJURY & DISABILITY LAW
 *Attorneys for Plaintiff*            MARY ELLEN GILL, ESQ.
6000 North Bailey Avenue
Suite 1A
Amherst, New York 14226

U.S. SOCIAL SECURITY ADMIN.          VERNON NORWOOD, ESQ.
 *Counsel for Defendant*
6401 Security Boulevard
Baltimore, Maryland 21235

**MIROSLAV LOVRIC**, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION</u>

Plaintiff Casey D. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying his application for Supplemental Security Income ("SSI"). (Dkt. No.

1.)  This matter was referred to me to prepare a Report and Recommendation to the Honorable

David N. Hurd, United States District Court Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d). (Dkt. No. 4, 5.)  This case has proceeded in accordance with General

Order 18.

Currently before this Court are Plaintiff's motion for judgment on the pleadings and

Defendant's motion for judgment on the pleadings. (Dkt. Nos. 9, 13, 14.)  For the reasons set

forth below, this Court recommends the District Court grant Plaintiff's motion for judgment on

the pleadings, deny Defendant's motion for judgment on the pleadings, and remand the

Commissioner's decision for further administrative proceedings.

## I.    <u>PROCEDURAL HISTORY</u>

On April 23, 2018, Plaintiff protectively filed his SSI application alleging disability

dating from June 28, 2011. (Administrative Transcript ("T.") 229-234.)  His application was

denied initially on August 8, 2018. (T. 64-79.)  Plaintiff's request for a hearing was granted. (T.

80-85.)  On October 26, 2020, Administrative Law Judge ("ALJ") John Loughlin adjourned the

telephonic hearing shortly after it commenced in order to give Plaintiff an opportunity to obtain

legal counsel and relevant medical records. (T. 30-38.)  On April 26, 2021, the ALJ heard

telephonic testimony from Plaintiff and vocational expert ("VE") Valerie Williams at the

rescheduled hearing. (T. 39-63.)

During this hearing, Plaintiff's counsel informed the ALJ that he had been unable to

obtain records from Plaintiff's primary care physician, Dr. Jang Boo Chi, despite making at least

ten attempts. (T. 42-44.)  The ALJ expressed his interest in these records in light of Dr. Chi's

restrictive opinion of Plaintiff's physical functional limitations, and informed counsel that he

would make further attempts to obtain them from the physician. (T. 43-44.)

The ALJ issued an unfavorable decision on March 24, 2022. (T. 10-29.)  As part of that

decision, the ALJ reported that he had been unsuccessful in obtaining Dr. Chi's treatment records

despite serving a subpoena on the physician. (T. 13-14, 221.)  The ALJ explained that he

"elected not to enforce the subpoena, because I find it unlikely that Dr. Chi's records are reasonably necessary for a full presentation of the case." (T. 13-14.)  The Appeals Council denied Plaintiff's request for review on July 5, 2023. (T. 1-6.)  Plaintiff commenced this proceeding on August 24, 2023 to challenge the Commissioner's denial of disability benefits. (Dkt. No. 1.)

## II.    GENERALLY APPLICABLE LAW

### A.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  To facilitate the court's review, an ALJ must set forth the crucial factors justifying his or her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must

3

be "more than a mere scintilla" of evidence scattered throughout the administrative record.

*Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams*, 859 F.2d at 258 (citations omitted).  Where substantial evidence

supports the ALJ's findings they must be sustained "even where substantial evidence may

support the plaintiff's positions and despite that the court's independent analysis of the evidence

may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153.  In other words, a reviewing court

cannot substitute its interpretation of the administrative record for that of the Commissioner if

the record contains substantial support for the ALJ's decision.  *Rutherford v. Schweiker*, 685

F.2d 60, 62 (2d Cir. 1982).

B.    **Standard for Benefits**[1]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or

she is "unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but

---

[1]  The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

4

> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015).  Under that five-

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments;  (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments;  (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or her
> past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*,

540 U.S. 20, 24 (2003).

## III.  <u>FACTS</u>

As of the date of the ALJ's decision, Plaintiff was 37 years old. (T. 45, 229.)  Plaintiff

attended regular education classes in high school but left after completing the eleventh grade. (T.

45, 320.)  At the time of his April 2021 hearing, Plaintiff lived with his girlfriend and her adult

son. (T. 321.)  Plaintiff's six year old son also regularly lived with him. (T. 334.)  Plaintiff has a

limited employment history that includes positions as a café worker and gas station attendant. (T. 320, 325.)

Plaintiff had childhood surgery to treat scoliosis and has experienced chronic back pain for much of his life. (T. 49-50, 325, 404.)  He testified that he had to shift positions every ten or fifteen minutes in order to alleviate the pain. (T. 50.)  He also developed cartilage issues in his left knee that made standing for long periods or climbing stairs difficult. (T. 53, 325, 401, 404.) During treatment for these physical impairments, Plaintiff developed an opioid addiction and completed substance abuse counseling. (T. 52-53, 334.)

IV.    **THE ALJ'S DECISION**

The ALJ first found that Plaintiff had not engaged in substantial gainful activity after the application date of April 23, 2018. (T. 16.)  At step two, the ALJ found that Plaintiff has the following severe impairments: "thoracic and lumbar degenerative disc disease and scoliosis status post fracture and placement of Harrington-type rod;[2] left knee chondromalacia patella;[3] and obesity." (T. 16-17.)  At step three of the evaluation, the ALJ found that Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of a listed impairment, including Listing 1.15 (Disorders of the Skeletal Spine), Listing 1.16 (Lumbar Spinal Stenosis), and Listing 1.18 (Abnormality or a Major Joint).

Next, the ALJ found that Plaintiff could perform less than the full range of medium work. (T. 18-22.)  Specifically, the ALJ found that Plaintiff can occasionally push, pull and/or operate

---

[2] A Harrington rod is a steel rod surgically implanted along the spine to provide stability and reduce curvature.  https://www.scoliosis.org/resources/medicalupdates/instrumentation systems.php [https://perma.cc/6WDT-FG6Z]

[3] Chondromalacia patella is a softening of the cartilage behind the knee that can cause chronic pain, weakness, and stiffness.  https://www.health.harvard.edu/a_to_z/chondromalacia-patella [https://perma.cc/WHN3-EXV6].

foot controls with the left lower extremity; can frequently kneel, crouch, or crawl; can frequently climb stairs or ramps; can occasionally climb ladders, ropes, or scaffolds, and can occasionally be exposed to vibrations. (T. 18.)  In making this RFC determination, the ALJ stated that he considered all of Plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 416.929" and Social Security Ruling ("SSR") 16-3p. (*Id.*)  The ALJ further stated that he considered opinion evidence and prior administrative medical findings in accordance with 20 C.F.R. § 416.920c. (*Id.*)  The ALJ also considered Plaintiff's subjective complaints regarding pain, symptoms, and functional limitations and found that his statements "are not entirely consistent with the medical evidence and other evidence in the record . . . ." (T. 19.)

At step four, the ALJ found that Plaintiff had no past relevant work. (T. 22.)  The ALJ then relied on the VE testimony at step five to find that there are jobs existing in significant numbers in the national economy that Plaintiff can perform. (T. 22-23.)  Accordingly, the ALJ found that Plaintiff was not disabled from his application date of April 23, 2018 through the date of the ALJ's decision. (T. 23-24.)

## V.    ISSUES IN CONTENTION

Plaintiff argues that the ALJ failed to properly develop the record by declining to enforce the administrative subpoena issued for Dr. Chi's treatment records. (Dkt. No. 9 at 7-14.)  He further argues that the ALJ improperly evaluated the medical opinion evidence, including the opinions of Dr. Chi and consultative examiner Dr. Kalyani Ganesh, resulting in an RFC that is not supported by substantial evidence. (T. 14-17.)  The Commissioner contends that the ALJ properly developed and evaluated all of the record evidence, including the medical opinion

evidence, and reached an RFC determination that is supported by substantial evidence. (Dkt. No. 13 at 8-15.)

This Court agrees that the ALJ was obligated to make further efforts to develop the record by obtaining Dr. Chi's treatment notes, particularly where the ALJ held the lack of treatment records against Plaintiff. Therefore, this Court recommends that Plaintiff's motion for judgment on the pleadings be granted, Defendant's motion for judgment on the pleadings be denied, and this case be remanded to the Social Security Administration for further administrative proceedings to allow development of the record, proper consideration of the medical opinions and other evidence, and reevaluation of the ultimate determination of disability.

## VI.    RFC AND MEDICAL OPINION EVIDENCE

### A.    Legal Standards

#### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective

symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945;

*see Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F.

Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL

587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An

ALJ must specify the functions a plaintiff is capable of performing and may not simply make

conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241,

267 (N.D.N.Y. 2010); *Martone*, 70 F. Supp. 2d at 150; *Stephens v. Colvin,* 200 F. Supp. 3d 349,

361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y.

2004).  The RFC assessment must also include a narrative discussion, describing how the

evidence supports the ALJ's conclusions, citing specific medical facts and non-medical

evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11

(N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2.    Evaluating Medical Evidence

The regulations regarding the evaluation of medical evidence have been amended for

claims filed after March 27, 2017,[4] and several of the prior Social Security Rulings, including

SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no

longer give any specific evidentiary weight to medical opinions; this includes giving controlling

weight to any medical opinion."  *Revisions to Rules Regarding the Evaluation of Medical*

*Evidence* ("*Revisions to Rules*"), 82 Fed. Reg. 5844, at 5867–68, 2017 WL 168819 (Jan. 18,

2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all

medical opinions and "evaluate their persuasiveness" based on the following five factors:

---

[4] Plaintiff's SSI application date was April 23, 2018. (T. 229-234.)  Thus, the new
regulations apply in this case.

supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical

10

opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5).  *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### 3.    Developing the Record

Given the remedial intent of the Social Security statute and the non-adversarial nature of benefits proceedings, an ALJ has an affirmative duty, regardless of whether the claimant is represented by counsel, to develop the medical record if it is incomplete.  *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); 20 C.F.R. §§ 404.1512 (d), 416.912(d) ("We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports."); *see also Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011) ("The duty of the ALJ, unlike that of a judge at trial, is to investigate and develop the facts and develop the arguments both for and against the granting of benefits."). "This entails a heightened obligation to ensure both the completeness and the fairness of the administrative hearing."  *Id.* (citing *Cullinane v. Sec. of Dep't of Health and Human Services of U.S.*, 728 F.2d 137, 137 (2d Cir. 1984) (describing an ALJ's "affirmative duty to ensure that pro se disability insurance benefit claimants receive full and fair hearings")).

In furtherance of the duty to develop the record, an ALJ may re-contact medical sources if the evidence received from the treating physician or other medical sources is inadequate to determine disability and additional information is needed to reach a determination.  20 C.F.R. §§ 404.1512(e), 416.912(e).  Although the ALJ must attempt to fill in any obvious gaps in the administrative record, "where the record evidence is sufficient for the ALJ to make a disability determination, the ALJ is not obligated to seek further medical records."  *Jaeger-Feathers v. Berryhill*, No. 1:17-CV-06350, 2019 WL 666949, at *3 (W.D.N.Y. Feb. 19, 2019) (quoting

*Johnson v. Comm'r of Soc. Sec.*, No. 1:17-CV-06350, 2018 WL 1428251, at *5 (W.D.N.Y. Mar. 22, 2018)).

**B.    The ALJ Failed to Properly Develop the Record by Declining to Enforce His Subpoena for Dr. Chi's Treatment Notes.**

In order to meet his affirmative duty to develop the record, an ALJ should develop a complete medical history "for at least the 12 months preceding the month in which [plaintiff] file[s] his application." 20 C.F.R. §§ 404.1512(d), 416.912(d). An ALJ must make every reasonable effort to help a plaintiff get medical reports from his or her own medical sources. *Id*. Every reasonable effort is defined in the regulations as "an initial request for evidence from [the] medical source and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, [the ALJ] will make one follow up request to obtain the medical evidence necessary to make a determination." *Id*. at §§ 404.1512(d)(1), 416.912(d)(1).

The applicable regulations state that, "[w]hen it is reasonably necessary for the full presentation of a case, an administrative law judge or a member of the Appeals Council may, on his or her own initiative or at the request of a party, issue subpoenas ... for the production of ... records ... or other documents that are material to an issue at the hearing." 20 C.F.R. § 404.950(d)(1). The regulation contemplates the issuance of a subpoena only "[w]hen it is reasonably necessary for the full presentation of a case," and even then, the ALJ "may" – not "shall" – issue one. 20 C.F.R. § 404.950(d)(1). The Second Circuit has therefore held that "[t]he plain language of this section clearly places the decision to issue a subpoena within the sound discretion of the ALJ." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

Thus, the ALJ's duty to develop the record is typically satisfied where, as here, the ALJ keeps the record open to receive further evidence after the administrative hearing, allows

Plaintiff an opportunity to provide such evidence, and the ALJ makes his or her own attempts to

obtain such evidence. *See Jordan v. Comm'r of Soc. Sec.*, 142 Fed.Appx. 542, 543 (2d Cir. Sept.

8, 2005) (holding ALJ met his duty to develop the record where the ALJ, despite not contacting a

treating physician regarding outstanding records, kept the record open to permit the records to be

provided by the plaintiff's counsel, and later contacted counsel to remind him that the evidence

had not yet been received, and that a decision would be made on the existing record).  Indeed,

courts have often found that an ALJ satisfied his or her duty to develop the record where a

treatment provider did not respond to an initial and a follow-up request for information. *See*

*Asije H. v. O'Malley*, No. 3:23-CV-00522 (TOF), 2024 WL 2131754, *7 (D. Conn. May 13,

2024).  Such rulings recognize the ALJ's discretion in wielding the subpoena power.

 "But this discretion is not unlimited, and the ALJ 'cannot ignore essential available

medical evidence.'" *Thurman v. Comm'r of Soc. Sec.*, No. 17-CV-474 (FPG), 2018 WL

4940726, at *4 (W.D.N.Y. Oct. 12, 2018) (quoting *Outman v. Comm'r of Soc. Sec.*, No. 1:16-

CV-988 (MAT), 2018 WL 3688312, at *2 (W.D.N.Y. Aug. 2, 2018)).  "The ALJ commits

'harmful error' when [he] fails to subpoena medical records that are 'reasonably necessary' to

the claimant's case." *Id*.

   A recent decision summarizes the judicial analysis this way:

   The Court wishes to be clear that the decision whether to issue a subpoena is
   within the ALJ's discretion, and that it will be a rare case indeed in which the
   boundaries of that discretion are exceeded.  But an ALJ traverses those
   boundaries when (1) the record contains a treating physician's opinion that would
   likely confirm disability if credited; (2) the record does not contain the opining
   physician's progress notes from the visits in which the bases for important
   diagnoses . . . would have been documented; (3) one basis for discrediting the
   opinion was a perceived inconsistency with the partial progress notes in the
   record; (4) one basis for the finding of no disability was a perceived inconsistency
   between the claimant's statements about her symptoms and the objective medical
   evidence; (5) the claimant and the opining physician had a therapeutic

relationship of meaningful duration, and the missing records were potentially
voluminous; (6) the opining physician was the only physician to observe
significant and potentially disabling health conditions; (7) the claimant asked the
ALJ to subpoena the missing records; and (8) the ALJ did not issue the subpoena,
and did not explain his reasons for failing to do so.

*Asije H. v. O'Malley*, No. 3:23-CV-00522 (TOF), 2024 WL 2131754, at *12 (D. Conn.

May 13, 2024)

Although the ALJ did issue a subpoena in this case, he declined to enforce it after Dr. Chi

ignored the document demand.  The harm to Plaintiff is the same as if there had been no

subpoena at all.  Plaintiff contends that Dr. Chi's treatment notes are essential because without

them, there is a significant gap in Plaintiff's treatment history that prevents a reliable assessment

of the medical opinion evidence and Plaintiff's disability status. (Dkt. No. 9 at 12.)  This

assertion is supported by the record.  At his April 2021 hearing, Plaintiff testified that he saw Dr.

Chi on a monthly basis between April 2018 and approximately November 2020. (T. 47.)  The

record contains nine different opinion forms completed by Dr. Chi addressing Plaintiff's ability

to return to work, all indicating that the opinion was based on a contemporaneous physical

examination. (T. 411-425.)  None of these examination notes are in the record.

The ALJ recognized the essential nature of these notes at the April 2021 hearing, when he

advised Plaintiff's counsel that he "did want to see Dr. Chi's reports in light of" the treating

source's restrictive opinion. (T. 43.)  After declining to enforce the subpoena, the ALJ

discounted Dr. Chi's opinion, largely because he found "the record does not include his

treatment records." (T. 22.)  The ALJ's evaluation of the opinions of consultative examiner Dr.

Kalyani Ganesh similarly notes that "the record includes very little treatment evidence" and

"very little objective evidence regarding the claimant's physical functioning" with "a two-and-a-

half year gap" in Plaintiff's orthopedic records. (T. 20.)  Thus, it is reasonable to conclude that

14

the missing examination notes would provide the objective evidence and clinical data necessary to properly assess Dr. Chi's opinion that Plaintiff has been "very limited" in his ability to lift, carry, push, pull, bend, or climb and "moderately limited" in his ability to sit, stand, and walk since at least August 2016, as well as the less restrictive opinions of Dr. Ganesh. (T. 412, 415, 417, 421, 425, 427.)

Despite the obvious impact that the lack of relevant treatment records had on the ALJ's analysis, the ALJ reached the opposite conclusion, stating:

> On February 10, 2022, an office staff member telephoned Dr. Chi's office and spoke to Katie and she acknowledged receipt of the multiple requests for records [citing T. 299]. Katie advised, among other things, that Dr. Chi did not have sufficient information to comment on the claimant's medical condition.
>
> After careful consideration, I have elected not to enforce the subpoena, because I find it unlikely that Dr. Chi's records are reasonably necessary for a full presentation of this case.

(T. 14.)

There are several flaws in the ALJ's explanation of his reasoning. To begin with, the ALJ's summary of the February 2022 conversation with a member of Dr. Chi's staff is inaccurate. Although Dr. Chi's office expressed concern about having up-to-date information to provide a new medical opinion, it did not dispute that it had relevant medical records. The contemporaneous contact report states in full:

> I called Dr. Chi's office to follow up on status of our numerous medical request. [sic] I spoke to Katie and she informed me that they did receive our request as well as the request from the claimant's Representative. Dr. Chi's office has set up several appointments with the claimant to come into the office for him to be evaluated. Dr. Chi does not have enough information on the claimant to complete the forms because he isn't seen on a frequent basis. The claimant never came in for the evaluation and that's why the doctor never released the records. I informed Katie that those forms must have been submitted by the claimant's attorney. We (SSA) are asking for all medical records for the claimant. The doctor does not have to fill out any forms for us. Katie said she would fax his

records over to me.

(T. 299.)  Thus, this conversation followed a consistent pattern in which Dr. Chi's office

confirmed that it held relevant medical records for Plaintiff, promised to provide them, and then

failed to produce them. (T. 43, 62-63, 296, 319, 429-434.)  It mirrors the experience of Plaintiff's

counsel, who advised the ALJ in April 2021 that his most recent request for records had been

outstanding for the previous month, despite Dr. Chi's office promising delivery within one week.

(T. 43, 62-63.)

Moreover, it is readily apparent that the missing records were reasonably necessary to a

reliable evaluation of the medical opinion evidence.  Citing the lack of supporting records, the

ALJ found Dr. Chi's opinion to be unpersuasive. (T. 22.)  Wholesale adoption of Dr. Chi's

opinion would likely erode many types of sedentary or light work and may result in a disability

finding.  If the ALJ had adopted only the lifting restrictions in Dr. Chi's opinion, he would not

have found Plaintiff capable of performing medium work.  *See Trepanier v. Comm'r of Soc. Sec.*

*Admin*., 752 F. App'x 75, 79 (2d Cir. 2018) (finding with regard to medium work that "[b]eing

able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical

than being able to lift up to 50 pounds at a time.") (quoting SSR 83-10, 1983 WL 31251, at *6

(Jan. 1, 1983)); *see also Urtz v. Acting Comm'r of Soc. Sec*., 159 F.3d 1349, 1998 WL 487083, at

*1 (2d Cir. June 11, 1998) ("The Commissioner's regulations define medium work as involving

lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing

up to twenty-five pounds and standing for approximately six hours out of an eight-hour work

day.").  Without the relevant records, the ALJ cannot provide a reliable evaluation of whether

Dr. Chi's opinions are consistent with Plaintiff's treatment history.  *See Raymond M. v. Comm'r*

*of Soc. Sec*., No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *8 (N.D.N.Y. February 22, 2021)

("At their most basic, the amended regulations require that the ALJ explain [his] findings regarding the supportability and consistency for each of the medical opinions, 'pointing to specific evidence in the record supporting those findings.'") (internal quotation omitted). Likewise, it raises questions about the ALJ's evaluation of the persuasiveness of Dr. Ganesh's consultative opinion.

Courts in this Circuit have remanded on similar facts. *See Asije H.*, 2024 WL 2131754, at *9-10 (remanding where ALJ did not subpoena treatment notes from psychiatrist who opined that plaintiff had "profound" mental health impairment); *Catherine P. v. Kijakazi,* No. 3:22-CV-01047 (KAD), 2024 WL 1509179, at *2 (D. Conn. Mar. 8, 2024) (remanding where ALJ did not pursue subpoena of treatment notes from long-time therapist who opined that plaintiff had disabling mental health symptoms); *Segarra v. Comm'r of Soc. Sec*., No. 20-CV-5801 (PGG/DF), 2022 WL 1051155, at *16 (S.D.N.Y. Feb. 17, 2022), *report and recommendation adopted*, 2022 WL 669877 (S.D.N.Y. Mar. 7, 2022) ("Remand is appropriate where the record is devoid of treatment notes for a relevant period, where there are indications in the record that such notes likely exist, and where the ALJ has failed to take steps to obtain the missing notes."); *Kennedy v. Comm'r of Soc. Sec.*, No. 17-CV-908-FPG, 2019 WL 988889, at *3 (W.D.N.Y. Mar. 1, 2019) (remanding where ALJ failed to subpoena treatment records that were being withheld by treating physician for nonpayment of copying fee); *Thurman*, 2018 WL 4940726, at *4 (finding ALJ committed remandable error where she declined to pursue treatment records potentially supporting chiropractor's opinion that plaintiff could not lift more than ten pounds and should avoid prolonged sitting, standing, and walking).

The ALJs in the cases cited above all compounded the harmfulness of their error by holding the lack of medical records against the plaintiff. *See Asije H.,* 2024 WL 2131754, at *9-

10 (remanding where ALJ used gap in treatment record created by unresponsive physician to plaintiff's detriment); *Catherine P.*, 2024 WL 1509179, at *2 (missing treatment records created "obvious gap" in the record that hindered plaintiff's disability claim); *Segarra*, 2022 WL 1051155, at *16 (remanding where ALJ recognized that missing treatment notes created a sizable gap in plaintiff's medical history); *Kennedy*, 2019 WL 988889, at *4 (finding ALJ's decision included numerous references to the lack of evidence in the record, which arguably could be resolved by missing treatment notes); *Thurman*, 2018 WL 4940726, at *8 (finding ALJ used gap in treatment records to plaintiff's detriment when she denied disability claim in part because of a lack of detailed explanations and clinical findings).

     This case is on all fours with those cited above.  Remand is thus recommended because the record is devoid of treatment notes for the relevant period, there are indications in the record that such notes likely exist, and the ALJ has failed to complete the necessary steps to obtain the missing notes.  *Segarra*, 2022 WL 1051155, at *16.  Proper development of the record will necessarily impact the ALJ's assessment of the medical opinions and other evidence, so the District Court need not consider Plaintiff's discrete challenges to the remainder of the ALJ's decision.  *See, e.g., Emily B. v. Comm'r of Soc. Sec.*, 2020 WL 2404762, at *11 (N.D.N.Y. May 12, 2020) (declining to address specific challenges to RFC and step five determination while remanding for consideration of newly submitted medical opinion evidence); *Samantha D. v. Comm'r of Soc. Sec.*, 2020 WL 1163890, at *10 (N.D.N.Y. Mar. 11, 2020) (declining to reach arguments concerning whether ALJ's findings were supported by substantial evidence where the court had already determined that remand was necessary).

     Accordingly, this Court recommends remand for further administrative proceedings to fully develop the record, properly evaluate the persuasiveness of the medical opinion evidence,

18

and reach an RFC determination that is supported by substantial evidence.

Although not raised in either parties' briefs to this Court, the District Court may take judicial notice that Dr. Chi surrendered his medical license in November 2022 as part of a settlement with state and federal authorities related to the overprescription of opioid medication and improper maintenance of related records.[5]  *See Rodriguez v. Comm'r of Soc. Sec.*, No. 23-CV-4554 (JMF/BCM), 2024 WL 130925, at *3 (S.D.N.Y. Jan. 10, 2024), *report and recommendation adopted*, 2024 WL 456710 (S.D.N.Y. Feb. 5, 2024) ("It is well-settled that the court may take judicial notice of the existence and content of local, state, and federal agency records.") (collecting cases).  As part of that settlement, Dr. Chi was required to "make arrangements for the transfer and maintenance of all patient medical records" and notify the New York State Office of Professional Conduct of contact information for the new recordkeeper, who shall "promptly" produce such records when requested by a former patient or the patient's representative. See Appx. A at 10 ¶ 4.  This new record-keeping arrangement, which did not exist at the time of the ALJ's decision, may expedite the process for the ALJ or Plaintiff's counsel to obtain Dr. Chi's treatment records.

**ACCORDINGLY**, it is

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) be **<u>GRANTED</u>**; Defendant's motion for judgment on the pleadings (Dkt. No. 13) be **<u>DENIED</u>** and that the matter be **<u>REVERSED AND REMANDED</u>** to the Commissioner pursuant to sentence

---

[5] *See* Appendix A, attached hereto.  Information related to the surrender of Dr. Chi's medical license is also available at https://apps.health.ny.gov/pubdoh/professionals/doctors/conduct/factions/PhysicianDetailsAction.action?finalActionId=12712 [https://perma.cc/8JGJ-YULK] and https://www.justice.gov/usao-ndny/pr/former-auburn-physician-pays-135000-and-forfeits-dea-registration-overprescribing [https://perma.cc/24Z6-RV8K].

four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and

Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written

objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE**

**APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v.*

*Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72.

Dated:    June 27, 2024
          Binghamton, NY

Miroslav Lovric
U.S. Magistrate Judge